JAMES MCDANIELS *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF RUTLAND, EZRA HARRINGTON, SENECA SMITH, NATHAN J. SMITH, JOHN H. VAIL, ISAAC J. VAIL, GEORGE O. VAIL, AARON R. VAIL AND JESSE LAPHAM.

[IN CHANCERY.]

*Accord and satisfaction. Receiving money offered with a condition. Surprise. Mistake.*

Where a party makes an offer of a certain sum to settle a claim, the sum in controversy being uncertain and unliquidated; and he attaches to his offer the condition that the sum offered, if taken at all, must be received in full satisfaction of the claim in dispute, the other party, if he receives it, takes it subject to the condition, and it will thus operate as an accord and satisfaction even though he declares at the time that he receives it only in part payment, or as far as it goes.

The rule on this subject is the same in equity as at law, and the decision to the above effect in *Mc Daniels* v. *Lapham et als.*, 21 Vt. 222, must govern in this case (a suit in chancery in reference to the same subject matter, and between the same parties in interest,) unless there exists some special equitable ground for relief.

Surprise is not a ground for relief in equity, unless it is accompanied with fraud and circumvention, the existence of neither of which are shown in the present case.

Ignorance of a fact, of which ignorance the party is conscious, is not a mistake of fact.

A court of equity will not afford relief to a party who has merely acted in ignorance of facts which he could have ascertained by the exercise of due diligence and inquiry.

Mistake of law affords no ground for relief in equity unless under peculiar circumstances involving or accompanied with other grounds for such relief.

APPEAL FROM THE COURT OF CHANCERY. The orator's bill prayed for a foreclosure of the right of the defendants in equity to redeem the premises described in a mortgage deed, dated January 10th, 1828, executed by Timothy Reed to Alexander Barrett to secure the payment of five promissory notes of that date for three hundred dollars each, which with the mortgage were sold and assigned to the orator by Barrett on the 7th of March, 1828. The mortgagor, Reed, quit-claimed the mortgaged premises in January, 1842, to Seneca Smith, Nathan J. Smith, John H. Vail, Isaac J. Vail, George O. Vail, Aaron R. Vail and Jesse Lapham; and they in March, 1843, deeded the premises to the President, Directors and Company of the Bank of Rutland, and they on the 2d of February, 1848, deeded them to Ezra Harrington.

The bill alleged that on the 26th of April, 1835, the orator and the said Reed ascertained that the amount due upon each of the notes at that date was four hundred and one dollars and forty-five cents, and that the said Reed agreed to treat those sums as principal, and pay annual interest on them, the notes bearing only simple interest, and that said Reed made and signed a memorandum on the back of each of the notes of the following tenor: "Due on the within, with annual interest, 28th April, 1835, four hundred and one dollars and forty-five cents," and that on the 26th day of April, 1836, Reed paid one hundred and twenty dollars and forty-three cents, being one year's interest on the five sums of four hundred and one dollars and forty-five cents, stated on the note to be the amounts due on them; and that the orator instead of endorsing it as a payment of the interest for one year on the above named sums, endorsed on each of the notes as follows,

" Received the interest on this note, 26 April, 1836 ; " and that on the 26th of April, 1839, seventy-six dollars and sixty-eight cents, being three years annual interest on one of said sums of four hundred and one dollars and forty-five cents, was paid which was endorsed on one of said notes as follows, " Rec'd the interest upon this up to the 26th April, 1839 ; " whereby the whole amount of interest appeared to have been paid on each of said notes to the 26th of April, 1836, and on one of them to the 26th of April, 1839, when in fact no part of the interest was paid which accrued before the 26th of April, 1835, and was computed and included in said sums of four hundred and one dollars and forty-five cents.

The bill further stated, that in March, 1843, the orator commenced an action of ejectment for the recovery of the mortgaged premises against the said Smiths, Vails and Lapham, who were then in possession, and had not then deeded to the Bank of Rutland, which was duly entered in the Rutland county court, and was pending therein and in the Supreme court, until the April Term of the county court, 1849, when the orator suffered a nonsuit ; and that during the pendency of said action, on the 10th of April, 1847, the Bank of Rutland sent one Henry G. Lapham to the orator at Bennington, where he then was on a visit to his friends, who, professing to act as the agent of the bank, offered to the orator the sum of one thousand eight hundred and seventy-five dollars, and read from a paper his instructions and intention respecting the same, as follows, " At the request and in behalf of the President, Directors and Company of the Bank of Rutland, I now tender and offer to you, by authority of said bank, the sum of one thousand eight hundred and seventy-five dollars, to be received by you in full satisfaction of the amount due you in principal, interest and costs on the notes and mortgage executed by Timothy Reed to Alexander Barrett, and by said Barrett transferred to you ; " and that the orator, being away from his home and away from his papers, and having no means then at hand to enable him to ascertain the amount due on the notes or the amount of costs that had accrued, and not being skilled in legal proceedings, he called to his assistance and counsel A. P. Lyman, Esq., an attorney and counsellor at law, residing at Bennington, and under his advice and instruction replied to the said Lapham, that he had not his papers

with him, and did not know how much there was due, that he would take the money offered and apply it on the notes and mortgage, that if there was more than enough he would refund, and if less than enough they must make it up, to which the said Lapham answered that he could tender the money in no other way than he had before stated; that if he took it, it must be upon those terms, and that thereupon the orator was advised by his attorney in the presence and hearing of the said Lapham, that it would make no difference, he might receive the money so tendered, and if the damages and costs should prove to be more he would be entitled to collect the balance and hold the mortgage premises as security for its payment, and that thereupon he took the money at the same time declaring that he did not receive it in full satisfaction, but only to apply so far as it would go.

The bill charged that the deed to the Bank of Rutland was without consideration, and that Henry G. Lapham was really the agent of the defendants, Smiths, Vails and Lapham; and the orator insisted that a much larger sum than one thousand eight hundred and seventy-five dollars was then due on said notes; and that in taking said money he acted under a mistake and was defrauded, and he offered to restore said money, and prayed that the defendants might be decreed to pay the full amount due on said notes and in default thereof be foreclosed. The defendants answered the bill, and their answers were traversed and testimony was taken, the material parts of which answers and testimony are sufficiently stated in the opinion of the court. The court of chancery dismissed the bill, and the orator appealed.

*W. H. Smith* and *E. Edgerton*, for the orator.

*S. H. Hodges* and *C. L. Williams*, for the defendants.

The opinion of the court was delivered, at the circuit session in June, by

IsHAM, J. The question in this case arises, whether the mortgage deed upon which this bill of foreclosure is brought, has in fact been discharged by payment of the debt to the plaintiff. If it has been discharged in that manner, the bill was properly dis-

missed by the chancellor; otherwise the plaintiff is entitled to a decree of foreclosure. In the case of *McDaniels* v. *Lapham,* 21 Vt. 222, it was held, that at law this mortgage debt had been paid, and that the plaintiff had no lien on the mortgaged premises which would enable him to sustain the action of ejectment. The facts as they appeared in that case are substantially the same as they now exist; so that the inquiry arises, whether the principles governing the case are the same in equity as at law. It is admitted, that on the 10th of April, 1847, Henry G. Lapham, as the agent of the Bank of Rutland, offered to the plaintiff at Bennington the sum of one thousand eight hundred and seventy-five dollars, in full satisfaction of the amount due on this mortgage debt. The plaintiff, it appears, refused to receive the money on those terms, and stated that as he had not the mortgaged notes with him, he did not know, nor had he the means of ascertaining the amount due on them; but offered to receive the money and apply it on the debt, and if it was too much he would repay the surplus, but if not enough they must pay the balance. It is conceded that Mr. Lapham refused to deliver the money on those conditions, and that he then read to the plaintiff the written instructions which he had received from the bank, and repeatedly informed him that he could offer the money on no other terms than those expressed in that letter, and that if he received the money he must accept it on those conditions, and those only. The plaintiff took the money from the table, still asserting that it should be applied on the debt to that extent only, and under the advice of his counsel that the balance of his debt could be recovered if the money was not sufficient to pay it. It is now claimed, that the sum of five hundred and ninety-two dollars and fifty-eight cents is still due on that debt after the application of that money, and among the exhibits is a computation of the notes, payments and credits made by Isaac McDaniels showing that balance as still due. The defendants in their answers deny that that balance or any other is due on those notes, and insist that the sum paid is equal to the amount due on them ; and that the acceptance of it, in any event, is a discharge of that mortgage. In looking at the exhibit making that balance, we perceive that interest has been cast on the several notes of three hundred dollars

each, from the 26th of April, 1830, when on the back of the notes there is a regular endorsement of the interest to the 20th of April, 1836, and on one of them to April 26, 1839. The explanation of this matter as made in the bill is denied by the bank in their answer; and they state that assurances were given to them, that the interest on those notes had been paid agreeable to the endorsements, at the time they took a deed of the land, and agreed to advance the money to pay off the plaintiff's incumbrance. This matter in controversy involves a sum nearly equal to the amount now claimed as the balance due on those notes. The notes were also subject to a deduction for payments made by the maker, and particularly for rents and profits arising from the use and occupation of a portion of these mortgaged premises by the plaintiff. A statement of these matters are made in that exhibit. It is unnecessary in this case to examine the merits of those claims, or the correctness of the exhibit and balance as there stated. It is sufficient that when the money was offered a controversy existed in relation to those matters ; that the claims were of an unliquidated and uncertain character, and were proper matters for judicial investigation, as well as of compromise and adjustment. Under those circumstances the rule at law was determined in the case of *McDaniels* v. *Lapham,* that " when a party makes an offer of a certain sum to settle a claim, when the sum in controversy is open, and unliquidated, and he attaches to his offer the condition that the sum, if taken at all, must be received in full satisfaction of the claim in dispute, and the party receives the money, he takes it subject to the condition attached to it, and it will operate as an accord and satisfaction, even though the party at the time of receiving the money declares that he will not receive it in that manner, but only in part payment of his debt as far as it goes." The mere act of receiving the money is an agreement to accept the same on the conditions upon which it was offered. The same doctrine had been previously held in the case of *Mc Glynn* v. *Billings,* 16 Vt. 329, and was subsequently recognized in the case of *Cole* v. *Transportation Co.,* 26 Vt. 87. On this subject the rule in equity is the same as at law, and must necessarily govern this case, unless some special matter exists which renders it inequitable

to give it that effect, and which entitles the party to relief from the operation of that rule.

As grounds for such relief it is stated in the bill that the plaintiff has been defrauded by the defendants, and that the conveyance to the Bank of Rutland was made for that purpose, and without consideration; that in offering the money to the plaintiff at Bennington they designedly, and in fact, did take an undue advantage of his situation and of his absence from his home and his papers; that he was surprised, and in accepting the money he acted without due deliberation, and under a mistake both of the facts in the case and of the law. If the facts stated are sustained by proof, we have no doubt as to the power and duty of the court to grant the relief prayed for in the bill. In relation to the charge of fraud and conspiracy, the case seems entirely destitute of any evidence to sustain it. When the money was offered there were no false representations made to the plaintiff by the defendants, or any one acting in their behalf; neither was there any confidential relation existing between the parties from which there could arise any breach of confidence or trust. The bill contains no charges of that kind; and yet, most of the authorities read at the hearing of this case have their application to cases of that character. So far as the Bank of Rutland are concerned, the conveyance of these premises was made to them for the purpose of securing a debt due to them from the mortgagor; and their offer to the plaintiff of the amount which they regarded due on that mortgage debt, was made in order to discharge an obligation which they had assumed upon themselves, and for the purpose of perfecting their own security. We see nothing on the part of the defendants in this particular, but the exercise of legal and equitable rights in order to bring to a final termination a matter which had long been the subject of legal controversy. The case is equally destitute of any evidence showing that any advantage was designed or in fact taken of the plaintiff, by making that offer of the money at Bennington rather than at Danby. No advantage could arise from that circumstance. The plaintiff had the right to accept or refuse the money. If it had not been accepted the offer would not have had the effect of a legal tender, as the conditions annexed to it,

and the unliquidated character of the claim would prevent that result. It would not have affected the plaintiff's lien on the mortgaged premises, nor his right of subsequent accruing interest. The plaintiff was not called upon to act under any possible forfeiture of rights, or any legal consequences of that character attending the result. He was not placed in any alternative of that character. He had only to refuse the money and his rights would have remained the same as if the offer of the money had not been made. So far as the bill charges fraud in. fact, and that an undue advantage was taken of the plaintiff in that transaction, the case seems wholly destitute of proof to sustain it. The case is also equally destitute of substantial reasons for relief on the ground of surprise. The plaintiff has not made that specifically the subject of complaint in the bill; but where that cause exists, relief may possibly be granted under the charge of actual fraud. In the *Earl of Bath* and *Montague's* case, 3 Ch. Cases 56, the Lord Keeper observed, that " the word *surprise* is a word of general signification, so general and so uncertain that it is impossible to fix it. A man is surprised in whatever is not done with so much judgment as it ought to be. But those who use that word, mean such surprise *as is accompanied with fraud and circumvention.* Such a surprise may be good ground to set aside a deed in equity, and hath been so in all times. But any other surprise," observes he, " never was, and I hope never will be." Such was the emphatic language of Lord SOMERS on that subject, and of that opinion was Lord HOLT, Ch. J. TREBY, and Baron POWELL ; 1 Story Eq. Jur. sec. 251; 1 Fonb. Eq., b. 1 ch. 2, sec. 28 ; 1 Madd. Ch. 212. This case is not brought within the application of that rule; and we think relief should not be granted for that matter in cases which that rule does not embrace. The plaintiff, when he accepted that money, had his own time for deliberation; he advised with his friends, and consulted with counsel, who, as it is stated, advised him not to receive the money if the security was good; and, what is more decisive in the case, the plaintiff has not given up an undisputed right, or one which was not a litigated matter. Upon these grounds, therefore, we think the bill cannot be sustained.

The more important question in the case arises whether the

plaintiff is not entitled to relief on the ground that the money was accepted under a mistake of fact and law. When the money was received the plaintiff probably supposed he could recover the balance of his debt if the money offered was insufficient to pay it, and that his security on the mortgaged premises would be preserved for that purpose. His counsel so advised him. It cannot be said, however, that he acted under any *mistake of fact* in the case. He *was ignorant* as to the balance due on that mortgage debt ; he so represented himself at the time the money was offered. The money was taken with full consciousness of the want of that information. But, as it was observed by Lord LOUGHBOROUGH and by Chancellor KENT in *Penny* v. *Martin,* 4 John. 567, "*ignorance is not mistake.*" *Canal Bank* v. *Bank of Albany,* 1 Hill 287, " a mistake of fact is an error of opinion." The plaintiff had made no estimate of the amount due on those mortgage notes derived from a computation of the same, and which computation proved to be erroneous. If an estimate of the amount due had been formed under those circumstances, it might be said that the plaintiff acted under a mistake of fact. It is true courts of equity will grant relief for ignorance as well as for a mistake of fact ; but the principles on which relief is granted in those cases are very different. When the party has acted in *ignorance of facts merely,* courts of equity will never afford relief where actual knowledge could have been obtained by the exercise of due diligence and inquiry. That was the very point determined in the case of *Penny* v. *Martin,* 4 John. Ch. 567. Justice STORY has also observed, 1 Eq. Juris, sec. 146 and note, that "it is not sufficient that the fact is material; but it must be such that he could not by reasonable diligence get knowledge of, when he was first put upon inquiry. For if by such reasonable diligence he could have obtained knowledge of the fact, equity will not relieve him, since that would be to encourage culpable negligence." In relation to the amount due on these notes, the plaintiff had as great and even greater means of knowledge than the defendants. The notes were under his control, and subject to his order ; and he must have known with greater certainty the amount which had been paid upon them. With reasonable diligence and on inquiry he could have ascertained the amount which he considered due on those notes, and if he assumed

to receive the money on the offer that if accepted it must be in full satisfaction of the mortgage debt, he is bound by the conditions imposed. Under such circumstances there is no mistake or ignorance of fact from which equity will relieve, even if upon a subsequent computation a larger sum is claimed.

The plaintiff, however, in accepting the money was not aware that he would legally be bound by the conditions under which the money was offered, or that in its effect it would operate as a satisfaction of the mortgage debt. His mistake in this particular was purely one of law and disconnected, as we have seen, from any fraud, undue advantage, surprise, mistake or ignorance of fact, or any other consideration which equity ordinarily regards as a just foundation for relief. The general rule on the subject of relief for a mistake in a matter of law is given in Fonb. Eq. 1, ch. 2, sec. 7, and note : " That ignorance of the law will furnish no excuse for any person ; it will not affect agreements nor excuse from the legal consequences of particular acts ;" and Justice STORY has remarked, 1 Eq. Juris, sec. 111, that in that rule " *he is fully borne out by the authorities.*" It is quite obvious, however, that there are many cases in which a party has been relieved from the consequences of acts which have arisen from an ignorance of the law. It would seem that those cases were decided upon particular circumstances involved in them, rather than upon the application of general equitable rules. As observed by Justice STORY, 1 Eq. Jur., secs. 137, 138 : " the real exceptions are very few and generally stand upon some very urgent pressure of circumstances. The rule itself is relaxed in cases where there is a *total ignorance of title* founded on a plain and settled rule of law, and in cases of *imposition, misrepresentation, undue influence, misplaced confidence* and *surprise ;* but it may be safely affirmed as a well established doctrine, that a mere mistake of law unattended with any such special circumstances as have been above suggested, will furnish no ground for the interposition of a court of equity ; and the present disposition of courts is to narrow rather than to enlarge the operation of exceptions." Without examining the various cases on this subject to which we were referred, it is sufficient to refer to the case of *Hunt* v. *Rausmanier*, 1 Peters 15, where the party acted under a mistake · of law and under the advice of counsel ; and yet the court refused

relief. In the case of *Bank of U. States* v. *Daniels*, 12 Peters 32, this subject and the authorities were fully examined, and in that case the court observed: "That mere mistakes of law are not remediable is well established in *Hunt* v. *Rausmanier*, and we can only repeat what was then said, that whatever exceptions there may be to the rule they will be found few in number, and to have something peculiar in their character and to involve other elements of decission." Those cases are regarded as having settled the doctrine in the courts of the United States. In England, in the case of *Stewart* v. *Stewart*, 6 Clark & Finell 964, Lord COTTEN-HAM has recently critically examined the authorities on this subject and came to the same conclusion, and his opinion was subsequently confirmed by the House of Lords. In the case of *Bank of White-hall* v. *Pettes*, 17 Vt. 444, the same doctrine was sustained in this state, and relief in equity was refused where a party acted under a mistake in law and upon the advice of counsel. There is nothing in this case that takes it from the operation of this general rule ; and unless we disregard the general current of both English and American cases we think the plaintiff is bound by the act of receiving the money to the conditions upon which it was offered, and that, in equity as well as at law, the mortgage debt must be regarded as compromised and discharged.

The decree of the chancellor is affirmed, with costs.