## THE VERMONT STATE BAPTIST CONVENTION *v.* JAMES S. LADD, EXECUTOR OF PRISCILLA B. LEACH'S WILL.

### *Will. Legacy. Accord and Satisfaction.*

1. LEGACY—INTEREST. Legacies, unless otherwise controlled by the will, draw interest after one year from the probate of the will; and the rule is not affected by the fact that the executor is unable to gather in the assets and pay the legacy within the year.

2. LEGACY—ACCORD AND SATISFACTION. When there is a dispute between an executor and a legatee as to the amount of interest due on a legacy, on account of the expense and delay caused by a long litigation carried on for the protection of the estate, an acceptance by the legatee of a sum less than the one due on the legacy is an accord and satisfaction, if the payment is made upon the express condition that it shall be in full for the balance due, and the money accepted without protest against such condition.

3. AGENT—RATIFICATION. The Baptist State Convention was the legatee and the money was paid to its treasurer; *Held*, that the convention by accepting and using the money, with knowledge of all the facts, ratified the acts of the treasurer in receiving it, if there were doubt as to his authority.

APPEAL from the Probate Court. Heard on an agreed statement, September Term, 1885, VEAZEY, J., presiding. Judgment *pro forma* for the plaintiff.

Priscilla B. Leach, the testatrix, died May 1, 1880; her will -was probated July 19, 1880, and letters testamentary were issued to defendant Ladd on the 30th of the same month.

The following is the clause of the will relating to the plaintiff:

"3d. I give and bequeath to the Baptist State Convention, incorporated by the Legislature of Vermont in the year 1851, eight thousand dollars ($8,000), the principal to be invested and the income to be used to support the preaching of the gospel in feeble churches, and in destitute places, at the discretion of the convention, only designating ($50.00) fifty dollars of said income to be paid annually to the Baptist church in Middletown, Vt., for pastor or preaching."

At the time the will was probated one year was allowed for the payment of debts and legacies. On the 29th day of June, 1881, said court duly extended the time for said purposes until July 30th, 1882; and on the 24th day of July, 1882, said court again duly extended the same until January 30th, 1883.

Charitable bequests were made by prior clauses of the will to other societies to the amount of $3,500; and the residue of the estate, after paying the expenses, and money legacies to the amount of $11,550, including the above, and after giving away a number of specific articles, was to be divided equally among the surviving brothers and sisters of the testatrix.

The appellant is the corporation named in said will, and is duly empowered to take such a bequest for the purposes intended. Its affairs are managed by seven directors, of whom George F. Davis is one; and he is also the treasurer of said corporation. This same state of things has existed at all the times which are material in this cause.

Said treasurer, as such, had the care and custody of all the money of the corporation, and had authority to receive

it and to pay it out, but no express or special authority to compromise or settle disputed claims, and he usually paid out the money upon the order of the directors. The investments of the corporation were usually managed by a finance committee of three, of which said Davis was one.

The property whereof Mrs. Leach died possessed came to her mainly from her husband's estate, and amounted to about $18,000. Nearly all of it was in securities and money, and a part was deposited in a savings bank or banks in the State of Connecticut. Before any measures had been taken to reduce this to the executor's possession, certain persons, who were next of kin to Mrs. Leach's deceased husband, laid claim to the said property, or to a large part thereof, on the ground that it belonged to the estate of the husband, and not to that of the said testatrix. Legal proceedings were commenced in Connecticut by such next of kin. The executor, perceiving that this claim, if established, would not only wipe out the residuum of the estate, but would impair the three charitable bequests, consulted with the officers or agents of the two other charitable societies, who agreed to share *pro rata* in the expense of the litigation. The court below found: "The executor employed counsel in Connecticut to attend to such litigation, and to protect the funds there deposited, which was a reasonable and proper thing to do; and said counsel conducted the affair to a successful issue in July or August, 1884, so that the executor soon after received the money from the Connecticut banks. In this litigation an expense was necessarily incurred to the amount of something over eight hundred dollars ($800). The executor, in making his *pro rata* division, laid $460 on the $11,500 of charitable legacies, and the remainder on the $6,000, more or less, of other legacies. The two other charitable societies paid their shares, as thus apportioned, and made no claim for interest on their legacies pending the litigation. At the same

rate the proper share for the appellant to contribute would be $320."

It appeared that the executor paid to the plaintiff, September 18, 1883, $4,800; on August 16, 1884, $2,880, and charged it $320 for costs of the litigation.

The appellant's claim was the $320 retained; and interest on the legacy from May 1, 1881, making $1,652.

*Henry A. Harman,* for the defendant.

If the statute supplies the rule which determines when such a legacy is payable, the solution becomes very easy. A time was allowed in the Ecclesiastical Courts, to enable the executor to know whether or not he would have the funds to pay with, before his consent that the legatee might have the legacy could be presumed. Instead of enacting a cast-iron rule that the executor must know at the expiration of a year, when possibly the will has not been yet established, our statute leaves the fixing of the time in the discretion of the Probate Court. R. L. ss. 2199, 2200.

That court has statutory power to fix a time for the payment of the legacies, in the first instance not exceeding a year. Then, if the executor does not know by that time whether he can safely pay the legacies, the court has power, upon proper notice, to extend that time within certain limits.

It would seem strange that a claim should bear interest by reason of delay when an action to enforce the claim would be prematurely brought. *Probate Court* v. *Kimball,* 42 Vt. 320.

And, according to that view, no interest would begin until November 17, 1884, when the Probate Court ordered the legacy to. be paid.

The facts before the court show that down to August, 1884, this executor could not safely have paid the whole of the legacy to the appellant.

Assuming,. for the present, that the executor and the

treasurer stood like ordinary persons, the facts would seem to show a case of tender upon condition, legally amounting to an accord and satisfaction, as to the disputed matters.

The Vermont law of this subject has been admirably summarized by the late Ch. J. PIERPONT, in the case of *Preston* v. *Grant,* 34 Vt. 203:

" To constitute an accord and satisfaction, it is necessary that the money should be offered in satisfaction of the claim, and the offer accompanied with such acts and declarations as amount to a condition that if the money is accepted, it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that if he takes it, he takes it subject to such condition."

" When a tender or offer is thus made, the party to whom it is made has no alternative but to refuse it, or accept it upon such condition.    If he takes it, his claim is cancelled, and no protest, declaration, or denial of his, so long as the condition is insisted on, can vary the result."

The treasurer, in his reply of August 19th, while making no objection to the charge for legal expenses, did attempt a faint protest about the interest, by no means so strong as the protests of the plaintiffs in *Glynn* v. *Billings,* 16 Vt. 330; or in *McDaniels* v. *Lapham,* 21 Vt. 222; or in *McDaniels* v. *Bank of Rutland,* 29 Vt. 230.

The manner of acceptance closely resembles that in *Cole* v. *Cham. Trans. Co.* 26 Vt. 87.

*W. C. Dunton* and *Edward Dana,* for the plaintiff.

Unless changed by express provisions of the will, legacies draw interest after the expiration of a year from the death of the testator.    *Bradford Academy* v. *Grover,* 55 Vt. 463; *Bradner* v. *Faulkner,* 12 N. Y. 474; *Glen* v. *Fisher,* 6 Johns. Ch. 33; *Rotch* v. *Emerson,* 105 Mass. 431; *Davis* v. *Swan,* 4 Mass. 208; *Wood* v. *Penoyre,* 13 Ves. 333, 334; 2 Will. Ex. 1424; *Loring* v. *Woodward,* 41 N. H. 391; *Webster* v. *Hale,* 8 Ves. 413; *Hoagland* v. *Schenck,* 1 Harr. N. J. (L.) 370.

After the expiration of one year from the testator's death legacies carry interest, although payment be from the condition of the estate impracticable.   2 Will. Ex., 1426; *Wood* v. *Penoyre*, 13 Ves. 333; *Ingraham* v. *Postell*, 1 McCord, 94; *Marsh* v. *Hague*, 1 Edw. Ch. 174; *Burke* v. *Ricketts*, 10 Ves. 332; *Martin* v. *Martin*, 6 Watts (Pa.) 67; *Kent* v. *Dunham*, 106 Mass. 586; *Sullivan* v. *Winthrop*, 1 Sumner, 1; *Gibson* v. *Ball*, 7 Ves. 96.

This legacy was not subject to any abatement.   The rule is stated thus in Williams on Executors:   " It must be here observed that a residuary legatee has no right to call upon particular general legatees to abate.   The whole personal estate not specifically bequeathed must be exhausted before those legatees can be obliged to contribute anything out of their bequests."   2 Will. Ex. 1360, and cases cited.

The opinion of the court was delivered by

POWERS, J.   Legacies in this State, unless otherwise controlled by the will, draw interest after one year from the probate of the will.   *Bradford Academy* v. *Grover*, 55 Vt. 462.

And this rule is not affected by the circumstance that the executor is unable to gather in the assets and so provide himself with funds to pay the legacy within the year. *Marsh* v. *Hague*, 1 Edw. Chan. 174.

The important contention between the parties arises upon the payment made by the defendant of the sum of $2,880 on September 3, 1884, which, he insists, amounted under the circumstances to an accord and satisfaction.   The plaintiff claims that there remained due a large balance of interest upon its legacy, and that the sum of $320 deducted by the defendant for legal expenses was wrongful and should be allowed plaintiff in this accounting.

Soon after the death of the testatrix a litigation sprang up which threatened, if successful, to defeat not only the

residuary legacies, but largely to diminish the specific legacies under the will.

The executor thereupon made an agreement with two of the charitable legatees to share in the expense of that litigation, and wrote Mr. Davis, the plaintiff's treasurer, February 25, 1884, a letter, notifying him of the litigation and informing him that "*pro rata* assessments, covering costs, will be made on all concerned." The result of the litigation was favorable to the estate, and the other two charitable societies paid their share of the legal expenses, and waived all claim for interest on their legacies pending the litigation.

August 16, 1884, the executor notified Mr. Davis that the litigation was ended, and enclosed a statement of the standing of the plaintiff's legacy, as claimed by the executor, which showed due the plaintiff $2,880, after deducting assessment for legal expenses and allowing no interest pending litigation; and also sending blank draft for said sum, which Mr. Davis was requested to sign, which the executor promised to honor on presentation, and also a receipt in full which he requested Mr. Davis to sign and return.

In response to this letter Mr. Davis wrote, August 19, 1884, saying: "I think the practice of Probate Courts in Vermont is to allow interest on legacies after one year from the time will is probated. I suppose there will have to be an accounting for interest. I will receipt to you any amount you may send me to account for on settlement."

August 20, 1884, the executor replied in a letter, rebuking the claim for interest and reminding Mr. Davis that two of the sisters of Mrs. Leach were entirely without means—one a confirmed invalid—and suggesting that the residue going to them ought not to be drawn upon to pay an interest charge.

No reply to this letter was made by Mr. Davis.

August 26, 1884, the executor again wrote Davis, saying: " Immediately upon the termination of litigation involving one half the estate of Mrs. Leach, I deposited balance due

your society, less *pro rata* assessment for defending suits, in bank here, requesting you to draw for the amount, viz.: $2,880," and adding "the funds are not drawing interest."

On receiving this pointed and specific notification, Mr. Davis consulted legal counsel relative to the matter, and on September 3, 1884, wrote the executor as follows:

"CAVENDISH, VT., September 3, 1884.
"C. B. ORCUTT, ESQ., AGT.,
　　　　　　150 Broadway, N. Y.,
　"DEAR SIR: I have this day drawn on you through Baxter National Bank, Rutland, for $2,880.
　　　　　　"Yours truly,　　　　GEO. F. DAVIS,
　　　　　　　　　　　　　　　　　"Treasurer."

And on the same day he made the following draft:

"$2,880.　　　　　　CAVENDISH, VT., September 3, 1884.
　"At sight, after date, pay to the order of Geo. R. Bottum, cashier Baxter Nat. Bank, Twenty-eight hundred and eighty dollars, value received, and charge to account of
　　　　　　　　　　　　　　"GEORGE F. DAVIS,
　　　　　　　　　　　　　　"Treas. Vt. Baptist State Con.
"To C. B. ORCUTT, Agent.
　　　　　　　　JAMES S. LADD, Executor,
　"Mrs. P. B. Leach's will, 150 Broadway, New York."

This draft was deposited by Davis in the Baxter National Bank for collection, and collected in due course and the proceeds placed to the credit of Mr. Davis.

September 4, 1884, the executor replied to the above letter of September 3, as follows:

"150 BROADWAY, N. Y., September 4, 1884.
"GEO. F. DAVIS,
　　　　Treasurer Vt. Baptist State Convention.
　"DEAR SIR: Yours of the 3d inst. advising that you had drawn on me for $2,880 duly received. I have paid the

draft, which is in full for all claims against the estate of Priscilla B. Leach, being balance due on legacy to your convention, as per statement rendered August 16, 1884, and subsequent advice of August 26.

"Very truly,     C. B. ORCUTT.

"For J. S. Ladd, executor."

Mr. Davis held the money received upon his draft some three weeks, and duly informed the directors of the convention that he held it; and the convention has since retained it. The receipt of this money was duly reported to the convention at its next annual meeting by the treasurer, and his report was accepted without question in this behalf.

October 6, 1884, Mr. Davis wrote to the executor, saying in substance, he never had any authority to settle this matter for less than the amount legally due, and never intended to do so, and claiming the full amount of the legacy with interest.

We are all agreed that this legacy was paid in full when Mr. Davis drew for the $2,880, and applied the proceeds to the use of the plaintiff.

The correspondence above set out shows clearly an attempt by the executor to pay the $2,880, in full extinguishment of the plaintiff's claim. It was offered as and for a full payment, and when accepted it was taken as offered in full. In this holding we do not question the general rule prevalent in this State and elsewhere, that payment of a sum less than the one due is no accord and satisfaction of the larger sum, because the facts do not bring the case within the range of that rule.

That rule applies only when the claim is liquidated, or is dependent upon a mere arithmetical computation. *McDaniels* v. *Lapham*, 21 Vt. 222.

Here it is true the claim, as the plaintiff now makes it, could be easily computed, and so from its stand-point was liquidated within the rule. But the defendant re-

pudiated this claim, and did not pay in recognition of it. He made the payment upon the express condition that it should be in full for the balance due on the plaintiff's legacy. The plaintiff took the money and converted it to its own use, without even a protest against the defendant's condition that it was in full. It is now too late to repudiate that condition. If the plaintiff did not intend to accept the condition, it should have refused the money. It cannot accept the one and reject the other. A payment must be retained if accepted upon the terms annexed to it by the payer. *Solutio accipitur in modum solventis.*

In *McGlynn* v. *Billings,* 16 Vt. 329, it was held, that when a debtor offers his creditor a certain sum as the balance due him on book, and upon his refusal by the creditor, deposits it with a third person for the creditor if he will accept it in full, and the creditor subsequently receives it from such third person, declaring at the time that he will not accept it in full, such acceptance of the money discharges the creditor's whole account.

In *Cole* v. *Champlain Transportation Co.* 26 Vt. 87, *McDaniels* v. *Lapham,* 21 Vt. 222, and *McDaniels* v. *Bank of Rutland,* 29 Vt. 230, the same doctrine was announced.

The defendant's letters of August 16th and 20th contained a clear notification to the plaintiff's treasurer of the terms upon which he could draw the $2,880, which the defendant claimed was the balance due, and the treasurer accepted the money without even a protest, as in *McGlynn* v. *Billings,* that he repudiated the condition. He must have understood that the defendant was paying in full. This is sufficient to bring the case within the authorities cited.

But if there be any doubt on this point the defendant's letter of September 4th, received while the money was in the treasurer's hands, renewed the condition upon which he was to hold it. He then was in condition to restore the money to the defendant, but after notifying his associates

on the board of direction—and we must assume that he probably was less reticent in his dealings with them than he thus far had been with the defendant—he elects to retain the money, and the convention itself is now holding the funds.

It is not claimed in the brief of the plaintiff that Mr. Davis acted without proper authority in the matter. of receiving this money. He was the fiscal agent of the convention, and the convention was fully informed of the claim of the executor respecting the amount of the balance due when the $2,880 were paid. In the report of the managers to the convention, dated September 24, 1884, they say: " In regard to the Leach legacy, a further payment of $2.880 was made to the treasurer the 4th inst. The balance of $320 is withheld by the executor of the will, on the claim that it is the part of costs necessarily incurred in defending the estate, which the convention should pay. It should be noted that hereafter the Baptist church in Middletown is entitled annually to an order of fifty dollars from the income of this legacy."

This report was accepted and adopted by the convention.

The treasurer, at the same session of the convention, reported the Leach legacy at the sum of $7,680, as part of the permanent fund of the convention, this being precisely the amount stated by the executor in his letter of August 16th, and this report of the treasurer covers the balance due, less interest and *pro rata* share of costs.

There can be, therefore, no room for doubt, that even if Mr. Davis had acted without due authority in accepting the payment of $2,880, as the true balance due on this legacy, his principal has ratified the payment with full knowledge of the executor's claim.

The executor is not chargeable with interest on the legacy, nor with the $320 withheld for legal expenses.

The judgment of the County Court is reversed, and judg-

ment that all the claims made by the plaintiff in the agreed statement be disallowed, and ordered that this judgment be certified to the Probate Court.