McDaniels *v.* Lapham et al.

⁂

JAMES McDANIELS *v.* JESSE LAPHAM, SENECA SMITH, NATHAN J. SMITH, GEORGE O. VAIL, AARON R. VAIL, JOHN H. VAIL AND ISAAC J. VAIL.

Indorsements of payments made upon promissory notes, whether of interest, or principal, constitute, when made upon the note itself, no part of the note, but are to be considered the same as receipts, executed by the holder to the maker of the note, for the sums received, and parol evidence is admissible to explain them, or even to show, that they were erroneously placed upon the note.

And such evidence is admissible, in an action of ejectment founded upon mortgage, brought against defendants not party to the mortgage, if it do not appear, that the defendants, when they purchased the mortgaged premises, made inquiry of the plaintiff as to the sum due on his mortgage, or *had knowledge* of the indorsements upon the mortgage notes, which the plaintiff proposes to explain.

The doctrine, that the receiving a part of a debt due, under an agreement that the same shall be in full satisfaction, is no bar to an action to recover the balance, does not apply to any cases, except where the plaintiff's claim is for a fixed and liquidated amount, or where the sum due could be ascertained by mere arithmetical calculation.

But when a party makes an offer of a certain sum to settle a claim, when the sum in controversy is open and unliquidated, and attaches to his offer the condition, that the same, if taken at all, must be received *in full*, or *in satisfaction*, of the claim in dispute, and the other party receives the money, he takes it subject to the condition attached to it, and *it will operate* as an accord and satisfaction, even though the party, at the time of receiving the money, declare, that he will not receive it in that manner, but only in part satisfaction of his debt, so far as it will extend.

McDaniels *v.* Lapham et al.

The purchaser of mortgaged premises, who is made defendant in an action of ejectment founded upon the mortgage, must pay, in order to relieve the land from the incumbrance, the sum due in equity upon the mortgage,—which will be the principal and interest of the mortgage debt, deducting such payments as may have been made, and any sums which the plaintiff may have received, as rents and profits of the mortgaged estate.

And where the defendant in such suit claims, that the sum due upon the mortgage is uncertain and unliquidated, and that he offered to the plaintiff a certain sum, with a condition attached to the offer, that, if the plaintiff received the money, it must be in full satisfaction of the mortgage debt, and that the plaintiff accepted the money so offered, the defendant is entitled to prove, for the purpose of showing that the sum due was really uncertain and unliquidated, that the plaintiff, previous to the commencement of the suit, had been in possession of a portion of the mortgaged premises, and so was liable to account for the rents and profits.

The case of *Miller* v. *Holden*, 18 Vt. 337, explained.

EJECTMENT for certain premises in Danby. Plea, the general issue, and trial by jury, September Term, 1847,—HALL, J., presiding. The writ was dated March 3, 1843, and was served upon the defendants March 22, 1843.

On trial the plaintiff gave in evidence a mortgage deed from Timothy Reed to Alexander Barrett of a farm in Danby, including the demanded premises, given to secure the payment of five promissory notes, for three hundred dollars each, dated January 10, 1828; also an assignment of the mortgage by Barrett to the plaintiff, dated March 7, 1828; also the five promissory notes described in the mortgage,—upon each of which there was an indorsement of the payment of interest to April 26, 1830, and an acknowledgment signed by Reed, dated April 26, 1835, in these words, "There is due on this note, with annual interest, four hundred and one dollars and forty five cents," and an indorsement, that the interest was paid to April 26, 1836, and upon one of which there was an indorsement, that the interest was paid to April 26, 1839; also a deed of the mortgaged premises from Reed to the defendants, dated January 11, 1842; and the plaintiff also gave evidence tending to prove, that four of the defendants were exercising acts of possession and ownership of the demanded premises,—which were a portion of the said mortgaged estate, lying south of a certain highway,—at the time of the commencement of this suit, and subsequently.

McDaniels *v.* Lapham et al.

The defendants gave in evidence a deed from themselves to the President, Directors & Co. of the Bank of Rutland, dated in March, 1843, conveying the entire mortgaged premises, and proved that the Bank, subsequently, on the twenty first of March, 1843, tendered to the plaintiff $2072, to apply upon the mortgage notes, and an additional sum of $25,00 for the cost of a suit then pending upon the mortgage, to recover that part of the mortgaged premises not demanded in this suit, and that the money was not accepted by the plaintiff.

The defendants also gave evidence tending to prove, that on the tenth of April, 1847, an agent of the Bank of Rutland, with authority for that purpose only, offered to the plaintiff, at Bennington, the sum of $1875 in their behalf, upon certain conditions, which the agent read from a paper, and which were as follows,—" At the request and in behalf of the President, Directors & Co. of the Bank of Rutland I now tender and offer to you, by authority of said Bank, the sum of $1875, to be received by you in full satisfaction of the amount due you, in principal, interest and cost, on the notes and mortgage executed by Timothy Reed to Alexander Barrett, and by said Barrett transferred to you,—said mortgage premises bounded" &c., (describing them;) that, the money being placed upon a table, it was offered and tendered to the plaintiff upon the terms specified in said paper; that the plaintiff replied, that he had not his papers with him and did not know how much there was due,—that he would take the money and apply it on the mortgage,—that if there was more than enough, he would refund, and if less than enough, they must make it up; that the agent replied, that he could tender the money in no other way, than he had before stated,—that if the plaintiff received the money, it must be upon those terms; that after several repetitions by the parties of their respective claims in regard to the tender, all as above stated, the plaintiff, still saying and insisting, that he would take the money and account for it, as he had before declared, and in no other way, took the money from the table,—the agent all the while claiming and protesting, that if he took the money, it must be upon the terms, on which it had been offered, and on no other; and that after the money had been received by the plaintiff he offered to give a receipt for it, which the agent declined, and then the parties separated.

The defendants also gave evidence tending to prove, that the plaintiff had entered upon the mortgaged premises, including the portion demanded in this suit, and had occupied them for about three years, ending in April, 1847, and had received the rents and profits ;—and they then offered to prove the value of the rents and profits, so received, and also offered to prove, that the plaintiff, in an action of ejectment brought to recover that portion of the mortgaged premises not demanded in this suit, had recovered a large sum for rents and profits, and had received the same; and the defendants claimed, that the rents and profits, so received by the plaintiff, should be applied in part payment of the mortgage notes ;—to which evidence the plaintiff objected, and it was excluded by the court.

The defendants also gave evidence tending to prove, that the plaintiff, in April, 1847, surrendered the possession of the demanded premises to the Bank of Rutland, and that the Bank had entered and ever since occupied the premises, and remained in possession thereof at the time of trial.

The plaintiff then gave evidence tending to prove, that about the twenty ninth of March, 1845, he demanded of the Bank of Rutland the sum of $2072, and the sum of $25, so tendered as above mentioned, and that they refused to pay the same.

The plaintiff also gave parol evidence tending to prove, that the interest, which was indorsed upon the mortgage notes as having been paid to April 26, 1836, was paid on the fifth of September, 1836, as interest for one year upon the sum of $401,45, stated on each note as being due April 26, 1835, and for interest upon that interest from the expiration of the year until the time of payment, and that the whole sum paid at that time was only $123,01, and that it was paid and applied by the express agreement of Timothy Reed, at the time, and that the interest indorsed upon one of the notes, as paid to April 26, 1839, was $77,00 in amount, and was for three years' interest on said sum of $401,45, and no more. This evidence was objected to by the defendants, but was admitted by the court.

The plaintiff also introduced a witness, who testified, that he had computed the interest upon the mortgage notes; that a computation of simple interest from April 26, 1830, to the time of making the tender of $2072, above mentioned, shewed the sum of $2699 to have been then due upon the notes, after deducting all payments

29

McDaniels *v.* Lapham et al.

made subsequent to April 26, 1830; and that a similar computation to the time when the tender was made at Bennington, shewed a sum then due upon the notes, above the sum of $1875 then tendered, of $954,33. To this evidence the defendant objected; but it was admitted by the court.

The plaintiff insisted, that the Bank of Rutland were strangers to this suit, and had acquired no right, as against the plaintiff, to the land in question, and that the defendants could not avail themselves, in their defence, of their deed to the Bank, or of any acts of the Bank under the deed, or otherwise.

The defendants insisted, and requested the court to charge the jury, that if the money tendered by the Bank of Rutland on the twenty first of March, 1843, was sufficient to pay the sum then due upon the notes, the plaintiff had no right of action, when he commenced this suit, and that he could acquire none, so as to sustain this suit, by the demand made by him after the suit was commenced and entered in court;—that the Bank of Rutland, when they paid the money, which was received by the plaintiff, on the tenth of April, 1847, had a right to prescribe the terms, upon which he should receive it, and that the plaintiff, if he received it, was bound to receive it upon the terms so prescribed, and could not vary the conditions by any protestation, which he should make at the time, and that, the money having been paid to him in satisfaction of the notes, his lien upon the premises was thereby discharged, and he could not recover in this action;—and farther, that the plaintiff could not recover the possession of the premises in this action, after having surrendered the possession of them to the defendants, and those claiming under them, and thereby given them license to occupy the same, without first giving them notice to quit.

But the court intimated, that, with a view to present the several questions in the case upon a bill of exceptions, they should instruct the jury, that if they found the explanation, given by the plaintiff's testimony, of the indorsements upon the mortgage notes, to be true, and should find, that a computation of simple interest upon the notes, from April 26, 1830, after deducting the indorsements as thus explained, would leave more due upon the notes on the twenty first of March, 1843, than the sum of $2072, then tendered, and more

due upon them on the tenth of April, 1847, than the sum of $1875, then tendered and received, the plaintiff would be entitled to recover.

Whereupon a verdict was taken for the plaintiff, subject to the defendants' exceptions to the several decisions of the court.

*Foot & Hodges* for defendants.

The acceptance by the plaintiff of the money tendered to him by the agent of the Bank of Rutland bound him to the conditions of the offer, notwithstanding any qualifications he may have made at the time of receiving it. In *Pynnel's Case*, 5 Co. 117, it is said, that " always the manner of the tender and of the payment shall be directed by him that maketh the tender and payment, and not by him that accepteth it." *Timber* v. *Gardner*, 10 Mod. 224. *Higden* v. *Higden*, Comb. 199. *S. C.*, 1 Petersd. Ab. 134. *McGlynn* v. *Billings*, 16 Vt. 329. *Sutton* v. *Hawkins*, 8 C. & P. 259, [34 E. C. L. 380.] This was not simply a *tender* of money,—as that must be without qualification; *Wood* v. *Hitchcock*, 20 Wend. 47,— but it was the offer of a certain amount of money, in full satisfaction of the amount due to the plaintiff; and the legal effect of the acceptance is the same, as though it had been offered and received under a mutual agreement, that it should be in full satisfaction and discharge of the plaintiffs' claim. And the question, then, is this,— would the acceptance of the sum offered, under such an agreement, be a good accord and satisfaction for the whole debt, in case it should prove to be larger than the amount received ?

The general principle seems to be, that the acceptance of a less sum in money, than is actually due, cannot be a satisfaction and discharge of the whole debt, although agreed by the creditor to be received as such. *Pynnel's Case*, 5 Co. 117. *Cumber* v. *Wane*, 1 Str. 426. *Fitch* v. *Sutton*, 5 East 230. *Harrison* v. *Close*, 2 Johns. 448. But the courts have obviously felt the force of the objections to this rule, and have been disposed to obviate its application, as far as possible, and have done so upon very slight grounds of distinction. NELSON, J., in *Kellogg* v. *Richards*, 14 Wend. 116. DEWEY, J., in *Brooks* v. *White*, 2 Met. 283. Ld. ELLENBOROUGH, in *Bradley* v. *Gregory*, 2 Camp. 383. BULLER, J., in *Stock* v. *Mawson*, 1 B. & P. 285, and *Heathcote* v. *Crookshanks*, 2 T. R. 6.

McDaniels *v.* Lapham et al.

Hence it has been decided, that the receiving of a less sum, before it was due, or at a different place, or in collateral articles, or by the note or surety of a third person, as a satisfaction of the whole debt, was a valid discharge, as an accord and satisfaction. *Boyd* v. *Suydam,* 20 Johns. 76. *Booth* v. *Smith,* 3 Wend. 66. 1 Wend. 164. *Strang* v. *Holmes,* 7 Cow. 224. *Watkinson* v. *Inglesby,* 5 Johns. 385. 16 Johns. 85. *Blanchard* v. *Noyes,* 3 N. H. 518. *Steinman* v. *Magnus,* 11 East 390. *Peyton's Case,* 9 Co. 77. *Lewis* v. *Jones,* 4 B. & C. 506, [10 E. C. L. 393.] *Sibree* v. *Tripp,* 15 M. & W. 23.

But this rule is only applicable to cases of *liquidated* damages, and not to cases, where the sum due is unascertained and uncertain. *Wilkinson* v. *Byers,* 1 Ad. & E. 106, [28 E. C. L. 48.] *Johnston* v. *Brannan,* 5 Johns. 269. *McGlynn* v. *Billings,* 16 Vt. 329. *Longridge* v. *Dorville,* 5 B. & Ald. 117, [7 E. C. L. 43.] *Hey* v. *Moorhouse,* 6 Bing. N. C. 52, [37 E. C. L. 276.] *Miller* v. *Holden,* 18 Vt. 337. The case at bar is clearly one of unliquidated damages. The amount due upon the mortgage notes was uncertain. Several indorsements had been made, and at different times; and the claim was subject to the application of the rents and profits received by the plaintiff,—the amount of which was altogether uncertain and to be ascertained by the jury. And even if it were a doubtful question of law, whether, or not, in this action, the plaintiff's demand was subject to be reduced by the amount of such rents and profits, that would alter the rule. *Longridge* v. *Dorville,* 7 E. C. L. 43. *Blake* v. *Peck,* 11 Vt. 483.

It should have been submitted to the jury, to determine whether the tender, made to the plaintiff before the commencement of the suit, was sufficient, after deducting from the plaintiff's demand the value of the rents and profits. If it were sufficient at the time of tender, he had no right of action. It was error to exclude from the jury evidence of the value of the rents and profits of the premises, while the plaintiff was in possession of them, as the defendants were entitled to its application upon the plaintiff's notes. *Sellick* v. *Munson,* 2 Aik. 150.

The Bank of Rutland were interested in the equity of redemption, so as to authorize them to make the tenders. At all events, the plaintiff can recover only upon the strength of his own title, and .

by accepting the money in satisfaction of the mortgage debt his lien was extinguished, and he had no longer a cause of action. *Taylor v. Porter*, 7 Mass. 355.

The parol evidence, introduced by the plaintiff in relation to the indorsements and the interest due on the notes, was inadmissible.

The plaintiff cannot recover the possession of the premises in this action, after having surrendered the possession of them to the defendants, or to those claiming under them, without first giving them notice to quit. *Hanchet* v. *Whitney*, 1 Vt. 311.

*E. Edgerton* and *Thrall & Smith* for plaintiff.

1. The indorsements on the notes do not constitute any part of the notes. *State v. McLeran*, 1 Aik. 311. *State* v. *Ward*, 2 Mass. 397. The testimony explaining the indorsements was not, therefore, objectionable, as explaining the notes themselves. The indorsements are in the nature of receipts, and, as such, are open to explanation. *Kimball* v. *Lamson*, 2 Vt. 138. *Beach* v. *Packard*, 10 Vt. 96. *Tobey* v. *Barber*, 5 Johns. 68.

2. The first tender made by the Bank was inoperative. It was insufficient in amount. It was abandoned by the Bank. The title of the Bank was not on record, and was not known to the plaintiff at the time; and the plaintiff might therefore treat the Bank as a stranger and disregard their tender.

3. The tender made April 10, 1847, should not defeat the action. It was made " on the principal, interest and costs on the notes and mortgage." No claim was made for an offset of the rents and profits. The principal sum of the notes was certain in amount; and the interest and cost, by known and legal rules of computation, was equally certain. The debt, therefore, upon which the tender was made, was a *liquidated* debt, and it exceeded the sum tendered. The receipt of the money by the plaintiff gives it the effect of a payment, not in satisfaction of the whole sum due, but *pro tanto* merely. *Seeley* v. *Spencer*, 3 Vt. 334. *Wheeler* v. *Wheeler*, 11 Vt. 60. Chit. on Cont. 506. If the debt were unliquidated, the sum received, if less than the amount due, is not a satisfaction, in the absence of any agreement of the parties to make it so. *Miller* v. *Holden*, 18 Vt. 337.

A mortgagee in possession is a trustee, and the rents and profits

are trust funds, for which he is liable to account, and which constitute a mere equitable debt in favor of the mortgagor, not recoverable at law, but the subject of a set off in chancery. 4 Kent 167. 2 Cruise 117, § 24. Rev. St. 212, §§ 1–4. If the action had been assumpsit upon the notes, instead of ejectment upon the mortgage, the offset could not have been enforced at law ;—it was not a legal debt. *Chapman* v. *Smith*, 9 Vt. 153. *Wake* v. *Tinkler*, 16 East 36. *Lull* v. *Matthews*, 19 Vt. 322. Much less could the court, in the action of ejectment, compel the application. The county court have no power, before judgment, to ascertain the amount equitably due upon the mortgage.

4. The case shows, that the premises were never technically surrendered by the plaintiff to the Bank. It was merely a permission to go into possession. 4 Bl. Com. 326. If this constituted in them a possession under the mortgage, the plaintiff is not entitled to rents, without notice to quit, but is entitled to the possession without such notice.

The opinion of the court was delivered by

POLAND, J. This was an action of ejectment, brought to recover a portion of a certain farm in Danby, which was mortgaged by Timothy Reed to Alexander Barrett on the tenth day of January, 1828, to secure the payment of five notes for the sum of three hundred dollars each. The facts proved on the trial were substantially the following ;—that the plaintiff was the assignee of the mortgage from Reed to Barrett and holder of all the notes, which were secured by it ; that Reed, in January, 1842, conveyed the whole of the farm to the defendants, and they continued in possession of that portion of it for which this suit is brought, until the time of the commencement of this suit; that in March, 1843, the defendants conveyed the portion, for which this suit is brought, to the Bank of Rutland, which deed was previous to the commencement of this suit, but was not recorded until afterwards; that before the commencement of this suit the Bank of Rutland tendered to the plaintiff the sum of $2,072,00 upon the mortgage notes, which the plaintiff refused to receive; but that in March, 1845, while this suit was pending, the plaintiff demanded said tender of the Bank of Rutland, and the Bank refused to pay the money to him. It ap-

McDaniels v. Lapham et al.

peared, that the notes were all unpaid; but the interest was indorsed on each note to April 26, 1830, and upon each of the notes was a written acknowledgment, signed by Reed, dated April 26, 1835, in these words,—" There is due on this note, with annual interest, four hundred and one dollars and forty five cents,"—and upon each of the notes there was an indorsement, that the interest was paid to April 26, 1836,—and on one of the notes was an indorsement, that the interest was paid to April 26, 1839. The plaintiff then proved, (to which the defendant objected,) that the indorsements of interest on the twenty sixth of April, 1836, were only of the interest for one year on the sum of $401,45,—that sum being treated as the principal of the notes respectively; and that the indorsement of April 26, 1839, on one note, was made in a similar manner, being the interest on $401,45 to that time. The defendants then proved, that, on the tenth day of April, 1847, the Bank of Rutland sent a special agent, with instructions in writing, to the plaintiff, and that the agent met the plaintiff at Bennington, and then informed him of his business and authority, and then offered and tendered to him, in behalf of the Bank, the sum of $1875, to be received by him in full satisfaction of the amount due him for principal, interest and costs on the mortgage notes; that the plaintiff said, that he could not receive the money on those conditions, but would take it, as far as it went upon his debt,—that he had not his notes there, and did not know how much was due; that the agent then told him, that he had no instructions to pay or tender him the money on any other conditions, than as a full payment and satisfaction of his claim, and could not make any other terms, and then placed the money on the table; that the plaintiff repeated his offer several times, to receive it and apply it as far as it went, which was as often answered by the agent, that, if he took the money, it must be in full satisfaction. The plaintiff then took the money and offered a receipt, which the agent declined to take. The defendants also offered evidence, to prove that the plaintiff had been in possession of the mortgaged premises and had received rents and profits, and also that he had recovered rents and profits of other persons on the other part of the land,—to show a part satisfaction of the mortgage debt; which the court excluded.

There are several questions raised upon the exceptions in this

case, and which have been discussed at the bar, upon which the court are not entirely agreed ; and as their decision is not necessary to a determination of the case here, they will not be decided ;—but upon the following points the court are so far agreed, as to be able to decide the case.

1. As to the admissibility of the parol evidence to explain the indorsements upon the notes. It has repeatedly been decided, that indorsements of payments, made upon notes, whether of interest, or principal, constitute, when made upon the note itself, no part of the note ; that they are mere admissions, or evidences, of payment, against the holder of the note, for the benefit of the maker. See *State* v. *McLeran,* 1 Aik. 311. *Kimball* v. *Lamson,* 2 Vt. 138. We consider these as standing upon the same ground, as receipts executed by the holder to the maker of the note, for the sums received ; and it has been well settled for a considerable time, that parol evidence is admissible to explain and even to contradict a receipt, whether it purports to be a receipt in full, or for a certain sum. *Sparhawk* v. *Adm'r of Buel,* 9 Vt. 41. *Tobey* v. *Barber,* 5 Johns. 68.

It is urged, however, that though this may be true in general, and even in this particular case, as against Reed, the original mortgagor and signer of the notes, yet that as against the defendants, who subsequently purchased the mortgaged premises of Reed, parol evidence ought not to be introduced, to show a greater sum due on the mortgage, than the note and indorsements thereon would furnish evidence of; and that the admission of such evidence would operate as a fraud upon them. There may be cases, undoubtedly, where a mortgage debt could not be set up against a subsequent purchaser, when the same would be good against the mortgagor ; and other cases, where it could not be set up to the same extent, as against the mortgagor ;—as when a mortgagee stands by and allows a purchaser to buy an estate as being unencumbered, without disclosing his mortgage ; or where he represents to the purchaser, that only a certain sum is due on his mortgage, and then attempts to set it up for a greater sum. But in the present case nothing appears, that, when the defendants, or the Bank of Rutland, purchased the premises, they made any inquiry of the plaintiff as to the sum due on his mortgage, or that they had any knowledge, from any source,

as to the indorsements upon the notes, or that they made their purchase with any reference to them. Under these circumstances, if it became material upon the trial in the county court, to determine the sum that was really due upon the mortgage notes, we think it was proper to permit parol evidence to be introduced to explain the indorsements upon them, or even to show, that they were erroneously or mistakenly put upon the notes.

2. Ought the evidence offered by the defendants, to show that the plaintiff had been in the receipt of the rents and profits of the mortgaged premises, and evidence to show, that he had recovered damages for rents and profits upon the other portion of the mortgaged premises, to have been admitted? There is no occasion for us to decide, whether, in any supposable case, a defendant in ejectment could be permitted to show a payment of the mortgage debt, either in whole, or in part, by a receipt of rents and profits by the plaintiff; and hence we give no opinion upon that question. In the present case, however, in the view we have taken of it, we think the evidence offered should have been admitted,—but for a different object and purpose, altogether, having, as we think, an intimate connection with and an important bearing upon the main question in the case, that is, the effect of the receipt by the plaintiff of the $1875 at Bennington, in April, 1847. The debt of the plaintiff was not against the defendants, or the Bank of Rutland, who had succeeded to the rights of the defendants in the land, for which this suit was brought; but, inasmuch as that debt was charged upon the land, they were bound to discharge it, or yield the land to the plaintiff. How much were the defendants bound to pay, to relieve the land from the plaintiff's incumbrance? Clearly, the sum that was due in equity upon his mortgage,—which would, of course, be the principal and interest of the mortgage debt, deducting such payments, as might have been made, and any sum, which the plaintiff might have received as rents and profits from the mortgaged estate.

In the present case, as the sums, which were received by the plaintiff, (as proposed to be proved by the defendants,) were wholly uncertain and unliquidated, and the necessary and proper subjects of an accounting, before any application could be made anywhere, they could not be shown as payment upon the mortgage debt, (even

30

if it can ever be done;) but yet the defendants had the right to have such application made in some form, either by the aid of a court of chancery, or by the exercise of the equity power of the county court, and were only liable to pay the balance due after such application had been made. We think, therefore, that the defendants ought to have been permitted to show, that there did exist these equitable offsets to the plaintiff's. debt, because, if such were really the case, then the sum " due in equity " on the plaintiff's mortgage beeame entirely uncertain and unliquidated, and the proper subject for settlement, adjustment, or compromise, upon such terms and conditions as the parties might agree to,—which might not be the case, if the sum due to the plaintiff were fixed and certain.

3.   The great question involved in this case, however, is as to the effect of the receipt of the $1875 by the plaintiff from the agent of the Bank of Rutland on the tenth of April, 1847. Was it in law a mere naked unqualified payment of that sum, in part satisfaction of the plaintiff's debt, as claimed by him ? Or, on the other hand, did it amount to a full and complete accord and satisfaction between the parties, and thus bar the plaintiff from any farther claim for any balance he may be able to show in his favor ? We are not disposed here to question in any respect the soundness of the doctrine, " that the receiving a part of a debt due, under an agreement, that the same shall be in full satisfaction, is no bar to an action to recover the balance," which was established at an early period in England by the case of *Cumber* v. *Wane*, 1 Str. 426, and which was followed by a long and uninterrupted series of decisions in England and in this country. Although several recent decisions in England (especially the case of *Sibree* v. *Tripp*, in the exchequer chamber, 15 M. & W. 23,) have apparently somewhat shaken the doctrine there, yet it has become too well settled by repeated adjudications in this state, to be now departed from.

This doctrine has never, to our knowledge, been held to extend to any cases, except where the plaintiff's claim has been for a fixed and liquidated amount, or where the sum due could be ascertained by mere arithmetical calculation. In this case, as we have already attempted to show, the sum really due to the plaintiff was entirely unliquidated and uncertain, and could only be ascertained by having an account taken of the rents and profits, which he had received,

McDaniels *v.* Lapham et al.

and necessarily depended much upon mere judgment and opinion as to their amount and value.    More than this, there was a dispute in reference to the amount due upon the notes themselves,—the plaintiff claiming to recover a much larger sum upon them, than the notes and indorsements showed to be due ; and the whole matter had been involved in a protracted litigation for several years.    Under these circumstances, we do not think, that the present case comes at all within the doctrine of *Cumber* v. *Wane,* so as to need sufficient consideration, provided the agreement can be established. The more important and much more difficult question to be settled in the case is, whether there was such an agreement between the parties, as to make the payment of the money to the plaintiff and the receipt of the same by him a good accord and satisfaction of his debt ;· for it is only upon that ground, that this can operate to bar his claim.

There is no doubt, but what the offer of this sum to the plaintiff by the agent of the Rutland Bank would have been entirely inoperative as a tender, for the very reason, that it was clogged with this condition, that, if he received the money at all, he must receive it in full satisfaction of his mortgage debt; and the reason given in the books for this is, " that the party making the tender has not a right to insist upon the claimant's being concluded from claiming more than what was tendered, by force of any implied admissions, growing out of the reception of the money, that the sum tendered was the amount due to him, and that he received it in satisfaction of his claims." The party making the tender must not attach such conditions to it, that the other party cannot take it, and still have a full right to claim more, if he can show himself entitled to it upon trial of· his cause.    It would seem to follow, as a necessary deduction from this well established rule, that, when a party makes the offer of a certain sum, to settle a claim, when the sum in controversy is open and unliquidated, and attaches to his offer the condition, that the same, if taken at all, must be received *in full,* or *in satisfaction,* of the claim in dispute, if the other party receive the money, he *takes* it clogged with the condition which the other party has attached to it, and is thus bound to its fulfilment.

It is an acknowledged general principle, that the party paying money has the right to direct its application on any particular de-

mand; and if the creditor receive it, he is bound to apply it as directed, even though he may declare to the debtor, at the very time of receiving it, that he will apply it in a different manner. It is urged, however, and with a good degree of plausibility, that it cannot with propriety be said, that the plaintiff in this case, when he received the money, received it in full satisfaction of his mortgage debt, when the case shows, that, at the very time of receiving it, he declared, that he would not receive it in that manner, but only so far as it went in part satisfaction of his debt. But we think, that the Bank of Rutland had the right to make him an offer of money on the very condition, upon which this was offered. The plaintiff was under no obligation to receive it; he could take it, or refuse it, as he chose; but if he saw fit to take it, after having been repeatedly informed of the terms and condition of the offer, and of the want of authority in the agent to vary the terms, he took it subject to the terms and conditions of the offer, and the law implies his agreement to the conditions from the act of taking the money thus offered; and he could not alter this legal implication, by expressing his dissent from the condition so attached to the offer.

The case of *McGlynn* v. *Billings*, 16 Vt. 329, seems on this point to be identical with the present. In that case the plaintiff and defendant met for the purpose of making a settlement, and, having examined their accounts, they disagreed as to the balance due to the plaintiff from the defendant. The defendant then drew an order in favor of the plaintiff upon a third person for the sum he admitted to be due, and offered it to the plaintiff as the balance his due. The plaintiff refused to receive the order, and claimed a larger sum, as being the amount the defendant owed him. The defendant then gave the order to one Hanley, who was present, and directed Hanley to deliver the order to the plaintiff, when he would receive it as the balance due to him. The plaintiff subsequently took the order from Hanley, but at the same time declared, that he did not receive it in full for the balance due him from the defendant, and brought his suit to recover the balance. The auditor reported, that there was still a clear balance due to the plaintiff above the amount of the order. In that case this court held, that the acceptance of the order by the plaintiff, under those circumstances, operated as a full discharge of all his claims, although he expressly declared, he did not

McDaniels *v.* Lapham et al.

so receive it. As before said, we are entirely unable to find any ground to distinguish that case from the present, and we are satisfied, that that case was decided upon correct and established legal principles.

The case of *Miller* v. *Holden*, 18 Vt. 337, has been strongly pressed on us, as establishing a contrary doctrine from that of *McGlynn* v. *Billings;*—but, upon examination of that case, we think it was decided by the court mainly upon the ground, that, after the witness standing by had given his opinion, that the reception of the money by the plaintiff then would only go in satisfaction of his claim so far as it went, the conditions, which had been insisted on by both parties before that, were mutually waived, and that the money was received by the plaintiff without any condition attached to it whatever. And I am informed by those members of the court, who participated in that decision, that the case was decided on that ground entirely. The case of *McGlynn* v. *Billings* cannot be considered as shaken by this decision, for that case is cited and approved by the court, in giving judgment in *Miller* v. *Holden.*

We have come to this conclusion with some reluctance, as it is possible, that the result may, in this case, be productive of injustice to some extent, and as the plaintiff evidently did not understand, that such would be the effect of his receiving the money, which was thus conditionally offered to him. But the old maxim, *"ignorantia legis non excusat,"* must apply in this case, as there does not appear to have been either fraud, or mistake in fact. Upon the whole we think, that if the defendants satisfied the jury of the existence of the facts, as the exceptions in this case state the testimony tended to prove, they formed a good defence to the plaintiff's suit, and the jury should have been charged to that effect; and in refusing so to charge and in rejecting the defendants' evidence as above mentioned we think the county court erred, and their judgment is therefore reversed and a new trial granted.