JOHN H. RIDLON, ADMR. *v.* GEORGE R. DAVIS.

*Contract.   Consideration.   Performance.*

In assumpsit on a promissory note by the payee's administrator, it appeared that shortly before the payee's death she agreed with defendant, the maker, that in consideration of what defendant and family had done for and furnished her by way of house-rent, fuel, &c., and in consideration that defendant would pay her doctor's bills through life, and her burial expenses, and erect headstones at her and her husband's graves, he should have the note in question, but that she should keep the note as security for performance on defendant's part. Defendant performed on his part, paying out therein less than the sum due on the note. *Held*, that what was agreed to be done by defendant after the contract was made, was a consideration sufficient to uphold the payee's promise ; that it made no difference that it was to be in part performed after the payee's death, nor that it was of a value less than the sum due on the note, nor that a part of the consideration was passed at the time the contract was made, and, perhaps, not the basis of an enforceable claim, nor that the payee was so far mistaken as to her liability for that part of the consideration as to think it enforceable, for, if mistaken, the mistake was one of law and not of fact ; and that performance by defendant operated a satisfaction and discharge of the note.

ASSUMPSIT on a promissory note.   Pleas, general issue, payment, plea of a special agreement operating payment, and offset. Trial by court, September Term, 1878, DUNTON, J., presiding.

The note was for $728, payable to the plaintiff's intestate, or bearer, on demand, with interest annually.   It bore date April 3, 1869, and annual indorsements of interest to April, 1874, besides an indorsement of $50, December 1, 1873, one of $50, January 30, 1875, and one of $69.22, October 16, 1876.   The third plea alleged that on December 1, 1875, the intestate promised that if defendant would thereafter pay for all medical attendance on her, defray all her funeral and burial expenses, and purchase and erect suitable headstones at her and her husband's graves, the same should be in full payment, satisfaction, and discharge of the promise declared on, and that, relying on that promise, defendant performed, &c.

It appeared that in 1869, the intestate, the defendant's mother-in-law, then about seventy-six years old, went to reside in a tene-

ment of the defendant's, near defendant's residence, and that she continued to live there two years, when she went to live in a room in defendant's house, where she remained about three years. Although she was not very infirm for a person of such age, she required some attention, and the defendant and his family saw that she was properly cared for, and the defendant furnished her firewood for the greater part of that time, and pastured and milked her cow. She never paid for any of those things. About January, 1874, the intestate, who then went to live with her son, Jonathan Ridlon, agreed with the defendant that in consideration of what he and his family had so done for and furnished her, and in consideration that he would pay her doctor's bill through life, and her funeral expenses at her decease, and erect a headstone at her grave, and one at her deceased husband's, he should have the note in suit, but that she should keep the note as security for performance on the part of the defendant. On January 30, 1875, the intestate died. The defendant paid her funeral expenses amounting to $50, and erected suitable headstones at her and her husband's graves, at an expense of $54, and so performed the agreement on his part, no medical attendance having been required. He also paid a claim due from her estate, amounting to $15.22. The note was in the intestate's possession at the time of her death, and the defendant did not obtain possession of it until about April following, when he made two indorsements on it, the one of $50, January 30, 1875, for funeral expenses, and the one of $69.22, for headstones and the claim paid as aforesaid. No other indorsements were made after the intestate's death, the indorsements of interest having been made yearly in settlement of defendant's yearly account for cash and other things furnished. The defendant made no charge and kept no account of the house rent, pasturing, &c., and it did not appear that he ever made any demand for compensation therefor, or notified the intestate that he had charged or should charge her for anything not included in said indorsements. But the defendant understood that he was to be compensated therefor in some way.

The court found that what defendant did prior to and under the agreement, including the risk he incurred, was reasonably

Ridlon, Admr. *v.* Davis.

worth enough to pay the note, or was an accord and satisfaction thereof, in accordance with the agreement, and rendered judgment tforhe defendant; to which the plaintiff excepted.

——— ———, for the plaintiff.

The contract is invalid, because it was not mutually binding, and because it sought to do what could be done by will only. 21 Vt. 238; 14 Pick. 198.

The finding of the court as to the value of what was done and of the risk incurred is insufficient as a basis for a judgment on the ground of set-off or payment, for that the risk was in law no risk—the contract being invalid. *Strong* v. *Connell,* 10 Vt. 231; *Bronson* v. *Rugg,* 39 Vt. 241; *Jewett* v. *Winship,* 42 Vt. 204.

The agreement was not an accord and satisfaction, because by its terms performance and not the agreement itself was to be the satisfaction. The old contract continued in force. Performance was not an accord and satisfaction because not to be completed until after the intestate's death. If the agreement was not good for that, it was good for nothing. Chit. Cont. 837–841.

*W. G. Veazey* and *J. B. Phelps,* for the defendant.

The contract is valid and capable of enforcement. The fact that the note was not delivered to the defendant in the life of the intestate, is not material. *Blanchard* v. *Weeks,* 34 Vt. 589; *Fenton* v. *Emblers,* 3 Bur. 1278; *Wells* v. *Horton,* 4 Bing. 40.

The opinion of the court was delivered by

BARRETT, J.   The pleadings which are before us resulted in issues of fact to the country. The case was tried by the court on those issues. It is now to be determined whether the facts found maintain those issues, or any of them, in behalf of the defendant. Those facts do not maintain the general issue in his favor. The second plea is special in bar, setting up payment in general terms. The third plea is special, setting forth a special transaction and agreement between the parties.and performance by the defendant operating payment, satisfaction, and discharge of the note as an enforceable contract against the defendant. The fourth plea is in

offset. Whatever may be held to be the legal effect of the facts found, upon the issues found, those facts, if effectual at all in favor of the defendant, are so upon the issue formed upon his third plea. So the case is considered with reference to that issue only. The third plea sets forth a transaction between the intestate and the defendant, constituting an agreement that, in case the defendant would do certain things thereafter to be done, some in her life time and some after her death, the same should be in full payment, satisfaction, and discharge of the indebtedness declared for, —being that evidenced by the note in question,—and the plea avers performance by defendant. On this, issue is taken and submitted for trial. The finding applicable to this issue is, that the intestate agreed with the defendant, that, in consideration of what he and his family had done for and furnished her, which was not paid for, and in consideration that he would pay her doctor's bills through life, and pay her funeral expenses at her decease, and erect head stones, etc., he should have the note in suit. This proposition was accepted and agreed to by the defendant. The plea does not aver the whole that is found to have been the consideration upon which the defendant was, by the agreement, to have the note, as it omits to aver anything as to what the defendant and his family had done for and furnished the intestate. No question of variance is made on this score. Whatever view may be held as to services and supplies theretofore rendered being a valid and sufficient consideration for the alleged promise of the intestate, it is plain that the promise and performance of what the defendant undertook thereafter to do, would render effectual and binding the agreement of the intestate, unless prevented by the fact that the performance by defendant was not to be till after the death of the intestate. What had been done that was recognized and treated by the intestate as part of the consideration for her promise as to the note, even though it might not, of itself, uphold the agreement, would not impair the effect of what was thereafter to be done, as a consideration of the intestate's promise. She had in mind what had already been done. She said to the defendant, "If you will hereafter do the things proposed, you shall have the note." Whether defendant could

have enforced a claim for what he had done or not, there was no mistake of fact as to what he had done. So, if the intestate supposed he could, and in that view made to him the proposal in full, as found by the court, so far as that part of the consideration for defendant's promise and performance is concerned, it was at most a mistake of law on her part; and so could not be available as a ground for invalidating her promise that defendant should have the note. We do not, therefore, find it needful to determine whether, for what defendant had done, he could have enforced compensation against the intestate. It comes then, to this,—did the performance by defendant of what he undertook, render effectual in his favor the promise of the intestate that he should have the note? No case is cited to the effect that the contract would not be effective, because the performance of it on the part of defendant was, by its provisions, to be done after the death of the other party. It was as much within the province of the intestate to make a binding contract in such terms, as in terms that should prescribe the time by days, and months, and years, within which the defendant was to perform on his part. The other party might die in such case, before the expiration of the time thus limited, but that would have no effect on the binding force of the contract, nor on the right of the party who should perform within the time limited. It is well understood in the law, that though the agreement to pay, and the payment in fact, of a less sum of money in discharge of a money debt already due, of a specific amount, does not bar a recovery of the unpaid balance. Still the agreeing to be paid for the debt in full by the doing or giving of something besides the payment in money, and something which the debtor was not under obligation to do by way of paying the debt, and the doing or giving of that something by the debtor, operates payment. Upon the third plea, the facts found in this case would seem to have effect in behalf of the defendant under the rule of law just stated. See *Bowker* v. *Harris*, 30 Vt. 424, also 21 Vt. 222. The agreement as found was, that, for the doing of things proposed, the defendant was to have the note. This, in legal effect, would be tantamount to satisfaction and discharge of the note as an indebtedness against the defendant. The

note, rightfully in his possession as his own, would be only of the same character and virtue as if indorsed as paid, or with his signature erased or torn off by the holder because the indebtedness had been satisfied and discharged. The transaction was not an agreement for the sale of the note to the defendant to be perfected and pass title by delivery, but it was for the payment and satisfaction of the note in the mode proposed and agreed,—and when thus satisfied, then to be given up, or held as of force no longer. The fact that the note was retained by the testator was consistent with the contract for its satisfaction, and, in fact, only thus consistent. In this view the court think the judgment can be maintained; and it is affirmed.