CHARLES L. CHAPIN *vs.* LITTLE BLUE SCHOOL.

Franklin. Opinion May 12, 1913.

*Contract. Check. Tuition. Pupils. Registration. Catalogue. Accord and Satisfaction. Constitution. Notice. Payment.*

1. If one makes an offer of a certain sum to settle an open and unliquidated account, and attaches to his offer the condition that it must be accepted, if at all, in full satisfaction of the claim in dispute, the party receiving the sum offered will be taken to have accepted it subject to the condition attached to it.
2. Such acceptance will operate as an accord and satisfaction, even though the party receiving it declares that he received it only in part payment of the debt.
3. When the fulfillment of a contract becomes impossible by reason of illness, the obligation to perform it is discharged.

On report. Judgment for plaintiff for $145.99.

This is an action of assumpsit in which the plaintiff seeks to recover the sum of one hundred and forty-two dollars and eighty-five cents, claimed to be due him as an unearned balance of an advance payment to Mr. Church, the manager of the defendant school for tuition and expenses of his minor son Charles, who was a pupil in said school for about five weeks in the fall of 1909. The pupil left the school at the suggestion of Mr. Church, on account of illness. The plaintiff had paid in advance $350 for tuition and expenses of his said son. The catalogue of said school contained the provision that pupils, by their presence in the school, are registered for the full school year and that no abatement is made from these terms for any reason other than that of illness, when an allowance of seven dollars a full week for board while absent will be made. It appears that the plaintiff's attention was not called to the catalogue regulations. The defendant pleaded the general issue, and filed a brief statement.

At the conclusion of the evidence, by agreement of the parties, the case was reported to the Law Court upon so much of the evidence as is legally admissible.

The case is stated in the opinion.

*E. E. Richards,* for plaintiff.

*Frank W. Butler,* for defendant.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

WHITEHOUSE, C. J. In this action the plaintiff, a resident of Springfield, Mass., seeks to recover the sum of $142.85 alleged to be due him as an unearned balance of advance payments made by him to Mr. Church, the manager of the defendant school situated in Farmington, Maine, for tuition and expenses of his minor son Charles, who was a pupil in the school for about five weeks in the fall of 1909, but left at the suggestion of Mr. Church on account of illness manifested by epileptic convulsions. The case comes to the Law Court on report.

The school catalogue states that the expense for tuition and board for the two sessions of 16 weeks each, which constitute the school year, is $700, payable one-half at the opening of the school in September and one-half on the 15th of January. It also contains these provisions: "Pupils by their presence in the school are registered for the full school year. No abatement is made from these terms for any reason other than that of illness, when an allowance of seven dollars a full week for board while absent is made."

The plaintiff's contention is that in accordance with an oral agreement made between Mr. Church and himself before the application for enrollment was signed, but re-affirmed and adopted afterward, the boy was taken by the defendant on trial, and not for any specified time, and that he should be required to pay only a proportional amount for the time he was actually in attendance; while the defendant's contention is that the plaintiff should pay at least the full amount for the first session of 16 weeks, amounting with incidentals and a charge of $20 for tutoring, to $398, less $7.00 a week for eleven weeks' absence on account of illness.

Mr. Church admits that he had several times expressed a "great desire to get a hold in Springfield for the school," and that after

visiting Springfield he "saw that Mr. Chapin was one of the well reputed families there," and he "felt that the family influence would be of value to the school." In this attitude of mind he called at the plaintiff's residence in Springfield in the spring of 1909, and had an interview with the plaintiff and the boy's sister with reference to the advisability of his sending Charles to the Little Blue School, also known as the "Abbott" School. The plaintiff testifies that he described the boy to Mr. Church as follows: "I told him I didn't know that the boy could stand a regular school,—that he wasn't strong physically, and that he was very backward mentally, and I shouldn't want to put him anywhere where he was going to be subjected to trouble of any kind, and wanted him treated carefully and kindly. Mr. Church told me, his exact words as I remember, were that 'I will take him and try him out.' I think that is the very phrase he used,—try him out."

Miss Anne Chapin, sister of Charles, thus testifies in relation to that interview: "I told Mr. Church all that I could about my brother's condition and previous life and health. I stated that he had always been peculiar, was backward and particularly in arithmetic, very nervous, had never been able to stay in school with other children; had had very little schooling and that for nine or ten months past he had been in the school for backward children at Amherst. My father said, that under those conditions it would be hard to state how well Charles would get along in a regular boys school. He said, 'I cannot tell about him, you will have to take him and try him.' Mr. Church replied that he would take him and try him."

Miss Elizabeth Chapin was also present and confirms the statements of her father and sister that Mr. Church cheerfully consented to take Charles into his school on trial.

As the apparent result of this conference an application blank for the boy's enrollment was forwarded to the plaintiff by Mr. Church April 13, 1909, and signed and returned by the plaintiff with the prescribed registration fee of $25. This enrollment states that the plaintiff desires to enter his son Charles "as a pupil in the Abbott school for the session beginning September 22, 1909." This appears to have been accompanied by a letter from the plaintiff in which he

says, "I understand you do not make any promises, and I should not want you to. I am putting him into your hands unrestrainedly to start with and let you see what you think the particular trouble with him is, and what kind of a school he needs." Subsequently, after he had signed the application for enrollment, the plaintiff says he had a second conversation with Mr. Church in regard to the boy, either in July or September, and he distinctly remembers that Mr. Church then made the statement that he would "take him and try him out." There was nothing said in regard to the period of time he would take in "trying out" Charles. The plaintiff was absent from the country from September 15 until Thanksgiving.

The boy accordingly entered the school September 29, and the plaintiff paid in advance the required tuition of $350 for one-half of the year and a deposit of $50 for expenses, in addition to the registration fee and $10.70 for railroad fare; a total of $435.70. Under date of October 29, just thirty days after the admission of the boy to the school, Mr. Church wrote a letter to the boy's sister Anne, in which he says: "I would like to see you as early as possible next week to discuss the advisability of Charles remaining at the school. Last Sunday morning he had a slight attack which gave every symptom of epilepsy in a mild form. This morning at the breakfast table he was taken again more violently. He is very comfortable and not hurt in any way, but naturally the school is very much disturbed. Although he will be about again tomorrow, I cannot feel that it is right toward the other boys of the school to retain a pupil who is liable to such attacks; I would not have knowingly admitted him had conditions been so understood. . . . It is a disappointment to the school that we are not able to do for him in justice to the rest of our boys what both you and his father could well ask."

It is perfectly evident that Mr. Church intended by this letter to signify to Miss Chapin his understanding that the boy's illness was of such a character as to disqualify him from remaining in the school and his desire and expectation that she would promptly remove him. She states that she so understood the letter; and, acting upon the assumption that Charles' connection with the school was already severed, she promptly requested Mr. Church to have

the boy's things packed as she should take him away "the next day." She accordingly went to Farmington and, with the approval and consent of Mr. Church, Charles left the school and went home with his sister. It is obvious that his epilepsy was not the temporary illness on account of which an allowance of seven dollars a week is made by the terms of the defendant's catalogue while the pupil is absent. It was mutually recognized as a more serious malady, which rendered it unsuitable for him to continue his membership in the school. This precise contingency was one which was not anticipated by either party, and for which neither party was responsible.

In his testimony Mr. Church does not deny the substantial accuracy of the testimony for the plaintiff showing that it was understood and agreed that the boy was taken into his school on trial, "to see what kind of a school he needs;" but he claims in his correspondence with the plaintiff that he understood that he was to have the whole school year in which to make the trial. Upon this construction of the contract Mr. Church rendered to the plaintiff his first statement of the account after the boy ceased to be a pupil at the school, charging him with the full $700 for a year's tuition, but made a discount of $200 on account of board, leaving a balance of $89.92 that was due from the plaintiff. But after an extended correspondence between the parties and an intimation from the plaintiff that he proposed to commence a suit to recover the amount claimed to be due him, Mr. Church rendered a second and revised statement charging the plaintiff with tuition for only one-half of the year, or $350 for the "first session" of 16 weeks, showing a balance due from him to the plaintiff of $114.08. In his letter of February 10, enclosing his check of the same date, he says, "Please find check from the School amounting to $114.08 which, it is hoped, will be accepted by you as a just settlement of your son's account."

The reply to this letter was made February 12 by the plaintiff's attorney, Mr. Knight, who claimed that the boy was taken into the school conditionally, and that the plaintiff should only be required to pay a pro rata amount "while the boy was in attendance." The statement of the account made by Mr. Knight on this basis, showed a balance of $196.85 due the plaintiff, in addition to the check for $114.08 already received. No reply was received from Mr. Church

and, on April 13, another letter was sent by Mr. Knight by registered mail, but on account of an error in the address this letter was not received by Mr. Church until May 10. In this letter he says, "Not hearing from you to the contrary within the next few days, I shall assume that Mr. Chapin is at liberty to use your check for $114.08, dated February 10, 1910, and apply the proceeds thereof on your account." Although no protest was made by Mr. Church against the appropriation of this check by the plaintiff in part payment of the amount claimed, it was not used by the plaintiff until May 27, when it was presented for payment at the bank and the amount credited to Mr. Church.

Under these circumstances it is contended in behalf of the defendant that, whether the sum due the plaintiff was more or less than $114.08, the check must be deemed to have "been accepted upon the terms proposed, and held to be a full and final settlement of the account."

It is familiar law that if one makes an offer of a certain sum to settle an open and unliquidated account, and attaches to his offer the condition that it must be accepted, if at all, in full satisfaction of the claim in dispute, the party receiving the sum offered will be taken to have accepted it subject to the condition attached to it, and it will operate as an accord and satisfaction, even though the party receiving it declares that he receives it only in part payment of the debt. *McDaniels* v. *Bank of Rutland*, 29 Vt., 230; *Same* v. *Lapham*, 21 Vt., 222; *Anderson* v. *Granite Co.*, 92 Maine, 430; *Fuller* v. *Smith*, 107 Maine, 161.

But in the case at bar it has been seen that Mr. Church's letter accompanying the check of $114.08 did not state or necessarily imply that it must be accepted, if at all, in full payment of the plaintiff's claim. It simply expressed the "hope" that it would be "accepted as a just settlement" of the account. In his letter two weeks before he says in relation to the boy, "I have no recollection of agreeing to take him for less than the full school year . . . I should certainly wish, however, to be holden to any verbal arrangement I made with you in conversation at Springfield." Under the circumstances this expression of a "hope" that the check might be accepted in full settlement was substantially equivalent to an inquiry if he would not

so accept it. But in reply, as above stated, the plaintiff, by his attorney, reiterated his contention that he should only be called upon to pay the pro rata amount for the time the boy was in attendance, and it has also been noted that the check was not used by the plaintiff until after the lapse of seventeen days from the delivery of his last letter notifying Mr. Church that "in the absence of anything to the contrary within the next few days" he should assume that he was at liberty to use the check. The plaintiff had been impliedly invited by the terms of the offer to make some response to Mr. Church, and he, in turn, was entitled to a reply to his letter and to be informed whether he was at liberty to appropriate the check in part payment of his claim. The evidence shows no agreement or intention on the part of the plaintiff to accept the check in full satisfaction. It shows no agreement to compromise and no "accord and · satisfaction." *Tompkins* v. *Hill,* 145 Mass., 379. The plaintiff is entitled to have the account adjusted under the terms of the original contract between the parties without reference to this check.

The plaintiff's son was received as a pupil on trial for the purpose of testing his capacity to meet the requirements of the school. The plaintiff's attention was not called to the catalogue regulation by which the admission of a pupil to the school apparently binds his parent to pay a year's tuition, and he never agreed to be bound by the regulation. A different oral contract was made by the parties before the enrollment of the pupil in the school and expressly reaffirmed afterwards, and the contract actually made between the parties was terminated by the serious illness of the boy which disqualified him from remaining in the school and on account of which his removal was requested by the defendant. "When the fulfillment of a contract becomes impossible by reason of illness, the obligation to perform it is discharged." *Lakeman* v. *Pollard,* 43 Maine, 463; *Dickey* v. *Linscott,* 20 Maine, 455. Furthermore, as applied to the facts of this case, such a regulation would be unreasonable and inequitable. *Rockland Water Co.* v. *Adams,* 84 Maine, 474. The suggestion of the defendant that any other boy was prevented from becoming a pupil in the school at that session by the enrollment of the plaintiff's son is not supported by positive or satisfactory testimony.

It is accordingly the opinion of the court that the defendant is justly entitled only to a proportional part of the $700 charged for a full year, as compensation for the seven weeks during which, as admitted in the plaintiff's statement of the account, his son was a pupil of the school, or $21.87 per week, with the other items credited, and a further sum of $20 for special tutoring, and interest from February 12, 1910.

The certificate must accordingly be,

*Judgment for the plaintiff for $145.99*