[No. 7359.]

## LEONARD v. HALLETT.

1. CONTRACT—*Assent—Evidence.* Plaintiff had negotiated the purchase, by a third party, of lands of defendant. By the terms of his agreement with the defendant he was to receive $20,000 from the purchase money. The purchaser having defaulted in sundry payments, plaintiff, at his instance, solicited from defendant an extension of time to the purchaser. Defendant advised plaintiff that if he should grant the extension he would allow him but $10,000 out of the proceeds. Plaintiff strenuously objected, but declared that he was powerless and would be compelled to submit. Defendant finally granted the extension, the purchase was completed, and the purchase money paid in installments, upon each of which plaintiff receipted for a sum equal to his share of the payment, on the basis that his total interest was $10,000. *Held* to fully establish plaintiff's assent to the abatement of his interest in the purchase money; that the transaction was in effect a substitution by all parties of a new agreement for the old one. The new contract was a sufficient consideration for the abrogation of the old one. *Held* further that the original agreement by which plaintiff was to receive $20,000 from the purchase money did not create any fiduciary relation between plaintiff and defendant; that in the new contract each was dealing for himself, and defendant was under no disability arising from the previous agreement. (278, 280)

2. ——*Consideration.* A promise without consideration to release one from a fixed liability is *nudum pactum.* (278)

3. PROTEST—*Effect Upon Subsequent Agreement.* A protest against a proposed arrangement, followed by a full assent thereto, is without effect. (279)

4. VENDOR AND VENDEE—*Default in Payments—Effect.* Where an agreement for the sale of lands provides that upon the purchaser's default to make the stipulated payments, at the dates appointed, the default shall, at the vendor's option annul the contract, the vendor is under no obligation to convey, after such default. (280)

*Error to Denver District Court.*—Hon. CARLTON M. BLISS, Judge.

Mr. LUTHER M. GODDARD and Mr. GEORGE D. TALBOT, for plaintiff in error.

Messrs. MACBETH & MAY and Mr. J. CUTHBERT TWEENEY, for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court:

This action was upon two alleged counts. The first pertains to oral contracts concerning the purchase and sale of certain lands. The second is based upon the theory of moneys had and received, and is intended to cover the same transaction. Both were put in issue. The record discloses, that in 1890 the plaintiff in error and others entered into a parol agreement with George W. Clayton to purchase eighty acres of land. Under this agreement Leonard and his associates were to take possession of the land, have it surveyed and subdivided into blocks and lots. The purchase price was $130,000.00, to be paid as follows: a reasonable cash payment, and as the lots were sold Clayton was to deed to the respective purchasers and receive the money therefor, until the purchase price was paid, when he was to deed the remainder, if any, to the vendees. Under this agreement Leonard and associates entered into possession, expended considerable for improvements, and in having it subdivided into blocks, lots, streets and alleys. Up to June 1st, 1893, under this agreement, Clayton had received all of the purchase price except $29,000.00. At that time a large number of lots were unsold. By reason of financial conditions it was impossible to sell them, and nothing further was done under the contract for several years. In the meantime Leonard purchased the interest of his associates. Thereafter Clayton agreed with him that he might carry out the contract. Clayton died August 15th, 1899, leaving a will in which the plaintiff in error, Hallett, was named executor and trustee of his estate. Leonard asked Hallett if he would permit him to carry out the contract. Two or three weeks later Hallett informed him that he would carry out the agreement as made with Clayton. At this time Leonard stated to Hallett that he thought he could interest the

Denver Realty Company in the property; that the realty company would pay what was due under the contract, with interest and taxes, and an additional amount to reimburse him, Leonard, for what he had spent in improving it, and that he wanted enough added to the amount owing the estate to partially reimburse him for what he had done. To this Hallett assented, and they mutually agreed to fix the purchase price of the property to the realty company at the sum owing the estate (which it was agreed was $29,000.00, with interest and taxes), plus $20,000.00, which latter sum was to be paid Leonard when the estate was paid the amount coming to it. By the efforts of Leonard, the Denver Realty Company and Hallett entered into a written contract for the sale of the lots at the price agreed upon by Hallett and Leonard. Under this agreement a payment was made of which Leonard, at his request, received his proportionate share, which amounted to $255.00. The realty company did not make its subsequent payments as provided. Leonard inquired of Hallett regarding the payments, and suggested that he had better write the officers of the company and stir them up. Several times during the eighteen months after the contract was made he called Hallett's attention to the matter, who said he had written the officers of the company, and that he would write them again. Nothing further, however, was done until October 9th, 1905, when in response to communications from Hallett the realty company requested Leonard to obtain an extension of time for the payment of the purchase price; they also opened negotiations with Hallett for an extension of time, or for a new agreement, which contemplated the payment of the price as originally agreed, with interest and taxes, less the amount that had already been paid. Leonard was instrumental in bringing about these negotiations, but was informed by Hallett while they were under way that if he did extend the time of payment he would allow him but $10,000.00 for his share instead of $20,000.00. Leonard strenuously objected to this saying, "I don't understand why; it is not your money, it is not Clayton's

money, it is my money. I don't understand why you should take $10,000.00 from me, but you have got everything in your own hands, and I suppose you can and will do whatever you want to.'' A party present at the time of this conversation stated that Leonard said in substance that he would have to accept; that he was powerless.

This conversation occurred on October 16th, 1905, at which time it was agreed that Leonard was to receive interest up to that time on the $20,000.00 mentioned in the first agreement. On that date Hallett wrote the realty company that the offer to make a new agreement was acceptable, save the first payment, that he wished the interest on the amount due under the first contract and taxes advanced by him, paid, and that if this was done he would accept the purchase price in semi-annual installments of $20,000.00 each. This offer was accepted by the company, and a second agreement entered into between Hallett and the company for the payment of the purchase price as specified in the original agreement, with interest, less the initial payment made under the first agreement. When the interest on the purchase price under the first contract was paid, as specified in the Hallett letter, Leonard was paid interest on $20,000.00 from the date of the first contract down to the time the second was executed, less the amount paid him under the first contract, so that the sum he received when the first payment was made under the second agreement amounted to $4,950.00. The second contract was carried out by the realty company, and as the payments were made Leonard received payments representing his interest on the basis that his share of the purchase price was to be $10,000 and receipted from time to time therefor, and when the transaction was finally closed, thus receipted in full. Thereafter, Leonard brought this suit to recover the additional $10,000.00, which he claimed was due him, together with interest. At the close of the

testimony, on motion, the court instructed the jury to return a verdict in favor of the defendant.

It is claimed that the testimony does not establish that Leonard assented to receive °$10,000.00 under the second agreement, in lieu of the $20,000.00 he was to receive under the first. We think the evidence on this subject, which includes the receipt he gave from time to time, fully establishes that he did assent to receive the amount paid him under the second contract in full payment of the amount he was to receive from a sale of the property.—*Bassick Gold Mine Co. v. Beardsley,* 49 Colo. 275, 112 Pac. 770, 33 L. R. A. (N. S.) 852; *C., R. I. & P. Co. v. Mills,* 18 Colo. App. 8, 69 Pac. 317; 9 Cyc. 254; *United States v. Child & Co.,* 12 Wall. 232, 20 L. Ed. 360; *Treat v. Price,* 47 Neb. 875, 66 N. W. 834; *Fuller v. Kemp,* 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785; *Reynolds v. Empire Lumber Co.,* 85 Hun. 470, 33 N. Y. Supp. 111; *Donohue v. Woodbury,* 6 Cush. (Mass.) 148, 52 Am. Dec. 777; *McDaniels v. Lapham,* 21 Vt. 222.

It is next contended that even if Leonard did agree to take $10,000.00 for his interest in the property, that such assent was without consideration, and therefore not binding on him. In support of this it is urged that Leonard fully performed all obligations imposed upon him by the original contract, and hence, a promise to Hallett to induce him to perform the unfulfilled part of his contract was without consideration. The general rule is that a naked promise to release a party to a contract from performance of that which he is already under obligation to perform by its terms, is not a valid consideration; for if the promisor gets nothing in return for his promise he has not obtained any benefit as a result of his promise. This rule, however, has no application to the facts here. At the time negotiations were pending for the second contract Hallett was not obligated to pay Leonard any part of the purchase money due under the first contract. It had not been paid, and Leonard was not to receive his share of the purchase price until the amount to be paid to the estate was first

paid. The original contract was between the realty company and Hallett. It was entered into through the efforts of Leonard as a means whereby he would receive a consideration for his equity. The realty company did not comply with its terms. By mutual consent of all the parties concerned, a new contract was entered into between Hallett and the realty company. Before it was executed, and as a condition precedent to its execution by Hallett, he informed Leonard that he would not execute the second proposed agreement except upon condition that Leonard should take $10,000.00 for his interest in the property. In brief, Hallett and Leonard agreed at a time when neither was under. obligation to the other, that if the second agreement was executed Leonard should be paid $10,000.00 for his interest in the lots. To this, although under protest, he assented, and the second agreement between Hallett and the realty company was thereafter executed. The negotiations which culminated in the execution of this contract were brought about through the efforts of Leonard. It was also in part for his benefit, as by a sale of the property to the realty company under this new contract, he would receive a consideration for his interest in it. The parties to a contract may discharge it by substituting a new one in its place. That is precisely what occurred. The original agreement between Hallett and the realty company was thereby annulled. Antecedent to this a new contract had been entered into between Hallett and Leonard to the effect that if the second agreement was executed and carried out, Leonard's share of the principal paid by the realty company was to be $10,000.00. In short new contracts were substituted for the originals. This was a sufficient consideration for their abrogation.—9 Cyc. 351, 354, 595; *Dreifus, Block & Co. v. Salvage Co.,* 194 Pa. 475, 45 Atl. 370, 75 Am. St. Rep. 704; *Stewart & Howell v. Keteltas,* 36 N. Y. 388; *Moore v. Detroit Locomotive Works,* 14 Mich. 266; *Rollins v. Marsh,* 128 Mass. 116; *Courtenay v. Fuller,* 65 Me. 156; *Coyner v. Lynde,* 10 Ind. 282; *Flegal v. Hoover,* 156 Pa. 276, 27 Atl. 162;

*Bishop v. Busse,* 69 Ill. 403; *Connelly v. Devoe,* 37 Conn. 570; *Stoudenmeier v. Williamson,* 29 Ala. 558.

Even were these not new contracts but merely alterations of the former ones, such alterations would have been based upon a consideration under the written agreement between Hallett and the realty company made June 26th, 1901; as a condition precedent to Hallett's conveying the property, the realty company was to make certain payments on certain specified dates, and time was expressly of the essence of that contract. Unless these payments were made on the dates named, Hallett was under no obligation whatever to make the conveyance. The contract states that such a default should, at his option, constitute an annulment of the contract. The payments were not made on the dates when due and had not been made at all when in 1905 Leonard approached Hallett, at which time Hallett was in a position to say that he would not convey. His obligation to do so had ceased, his promise therefor to renew his obligation and to agree to convey the property on payment of certain sums was valid, and was a sufficient consideration to support Leonard's agreement to take a smaller sum than would otherwise be due him.—*Watson v. Elliott,* 57 N. H. 511; *Jaffray v. Davis,* 124 N. Y. 165, 26 N. E. 351, 11 L. R. A. 710; *Hutton v. Stoddart,* 83 Ind. 539; *Boyd v. Moats,* 75 Iowa 151, 39 N. W. 237.

It is urged that by the original agreement Hallett became the agent and trustee of Leonard; that the parties sustained this relation when the second contract was entered into with the realty company, and that therefore, Hallett had no right to exact any promise from his principal, or *cestui que trust,* for the performance of his duty as such agent or trustee. The testimony wholly fails to establish any such relation between the parties. The legal title to the lots was in the Clayton estate, or perhaps more accurately speaking, in Hallett as trustee for the estate. Leonard had a prospective equity in these lots. The original agreement was to sell this property for a sufficient sum to reimburse the estate for the

amount due it, and leave Leonard $20,000.00. This did not create the relation of agent, trustee or principal. It was for the benefit of both, by which each would receive a consideration for his interest from a sale of the property. This contract was not carried out and a second one was entered into with the realty company, by which, under the contract entered into between Hallett and Leonard, before the second contract was made, Leonard, when the realty company contract with Hallett was carried out, was to receive $10,000.00 for his interests, so that each was acting for himself in the premises, under a mutual arrangement whereby each was to receive a specified sum or consideration for his interest in the lots.—Huffcut on Agency, (2nd Ed.), Sec. 218.

The judgment is affirmed.

*Affirmed.*

CHIEF JUSTICE MUSSER and MR. JUSTICE GABBERT concur.

Decided April 6, A. D. 1914. Rehearing denied June 1, A. D. 1914.